**Charles GARNIER, Paris, Plaintiff,**

v.

**ANDIN INTERNATIONAL, INC., et al., Defendants.**

**Civ. A. No. 92–0561 P.**

United States District Court, D. Rhode Island.

May 5, 1995.

John Deacon, Providence, RI, Herbert B. Barlow, Jr., Cranston, RI, for plaintiff.

William R. Grimm, Providence, RI, Julius Rabinowitz, New York City, for defendants.

## OPINION AND ORDER

PETTINE, Senior District Judge.

Pursuant to the Copyright Act of 1976, 17 U.S.C. § 505 and the United States Supreme Court's holding in *Fogerty v. Fantasy, Inc.,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the defendants seek attorneys' fees as the prevailing party in this copyright infringement action. For the foregoing reasons, the defendants' motion is denied.

### I.

In 1987, plaintiff Charles Garnier, Paris ("Garnier") designed a piece of jewelry known as the Swirled Hoop Earring. It was offered for sale in April 1989 and has been distributed to customers internationally and in the United States. In 1990, defendant Andin International, Inc. ("Andin") manufactured and sold identical copies of the earring without the plaintiff's knowledge or authorization. In July 1992, when the plaintiff discovered this, it, for the first time, filed a copyright registration and began to affix a notice of copyright to the Swirled Hoop Earring. The plaintiff then sent a cease and desist letter to the defendants, claiming an infringement of its copyright. The defendants' refusal to accede spawned a lawsuit in this Court against the defendants alleging infringement of the plaintiff's rights to the Swirled Hoop Earring. In May 1993, the plaintiff filed a motion for a preliminary injunction, asking the Court to enjoin the defendants from continuing to manufacture and distribute copies of the earring. The defendants then filed a motion for summary judgment seeking a dismissal of Count I of the complaint. Following an evidentiary hearing, I denied the plaintiff's motion for preliminary injunction and granted the defendants' motion for summary judgment as to Count I. I concluded that the plaintiff had forfeited its copyright in the Swirled Hoop Earring because the plaintiff had omitted notice of copyright from the Swirled Hoop Earring when it was first published and subsequently failed to make reasonable efforts to cure the omission. On March 2, 1994, I entered judgment as to Count I pursuant to Fed.R.Civ.P. 54(b). The plaintiff appealed. On October 7, 1994, the appellate court affirmed this Court's judgment. *See Charles Garnier, Paris v. Andin Int'l, Inc.,* 36 F.3d 1214 (1st Cir.1994).

### II.

It is undisputed that the defendants are the prevailing party for purposes of determining eligibility for an attorneys' fees award pursuant to the Copyright Act, 17 U.S.C. § 505.

*Fogerty,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455, settled a conflict among the circuits concerning a prevailing defendant's entitlement to attorneys' fees in copyright infringement actions. While the Third Circuit applied an "evenhanded" approach, the Ninth Circuit applied the "dual" standard approach, whereby prevailing defendants were confronted with more stringent requirements than prevailing plaintiffs.[1] However, *Fogerty* leveled the playing field:

> Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.

*Fogerty,* —— U.S. at ——, 114 S.Ct. at 1033.

Notwithstanding a level field, a vigorous debate continues in defining the parameters of the court's discretionary power to award or deny such a fee. " 'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations [identified by the United States Supreme Court].' " *Fogerty,* —— U.S. at ——, 114 S.Ct. at 1033 (citation omitted). The Supreme Court offered a list of "several nonexclusive factors that courts should consider in making awards of attorney's fees to any prevailing party" as enunciated by the Third

---

1. Under the "dual" standard approach, prevailing plaintiffs were awarded attorneys' fees virtually automatically, while prevailing defendants were required to demonstrate that the original suit was frivolous or brought in bad faith in order to receive attorneys' fees. *Fogerty,* —— U.S. at ——, 114 S.Ct. at 1026.

Circuit in *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 156 (3d Cir.1986) *cited in Fogerty,* —— U.S. at —— n. 19, 114 S.Ct. at 1033 n. 19. These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb,* 788 F.2d at 156. There is a clear admonition from the Supreme Court that these factors may be applied "so long as [they] are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Fogerty,* —— U.S. at —— n. 19, 114 S.Ct. at 1033 n. 19.

A brief outline of the pertinent aspects of the *Fogerty* opinion puts in focus the approach I take in denying a fee award to the defendants' attorney.

In *Fogerty,* the successful defendant of a copyright infringement action moved for attorneys' fees pursuant to 17 U.S.C. § 505 which states that "the court may ... award a reasonable attorney's fee to the prevailing party as part of the costs." The Court of Appeals, 984 F.2d 1524 (9th Cir.1993), applied a "dual" standard. *See Fantasy, Inc. v. Fogerty,* 984 F.2d 1524 (9th Cir.1993). That is, the Court of Appeals applied a standard that generally awards fees to prevailing plaintiffs but does not award fees to a prevailing defendant unless the defendant can demonstrate that the original suit was frivolous or brought in bad faith. The Supreme Court rejected the application of a "dual" standard, holding in *Fogerty* that prevailing plaintiffs and defendants must be treated alike under section 505. This conclusion was supported by the language and legislative history of section 505. "The legislative history of § 505 provides no support for treating plaintiffs and defendants differently with respect to the recovery of attorney's fees." *Fogerty,* —— U.S. at ——, 114 S.Ct. at 1028.

In the course of its discussion distinguishing its case from *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), another fee shifting case, the *Fogerty* Court noted that:

> The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public.... In the copyright context, it has been noted that "[e]ntities which sue for copyright infringement as plaintiffs can run the gamut from corporate behemoths to starving artists; the same is true of prospective copyright infringement defendants."

*Fogerty,* —— U.S. at ——, 114 S.Ct. at 1028 (citing *Cohen v. Virginia Elec. & Power Co.,* 617 F.Supp. 619, 622–23 (E.D.Va.1985), *aff'd,* 788 F.2d 247 (4th Cir.1986)).

The Court also instructed that:

> Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.... Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

*Fogerty,* —— U.S. at ——, 114 S.Ct. at 1030.

The "absolutes" of *Fogerty* are the following: the awarding of fees is discretionary with the court; the statute does not limit fee awards to exceptional cases;[2] prevailing plaintiffs and prevailing defendants are to be treated alike by the courts in considering attorneys' fees awards; there is no precise rule or formula for making awards; and the court must remain faithful to the purposes of the Copyright Act. *Fogerty* provides district courts with some guidance by reciting the factors to consider in resolving fee award disputes, as set forth in *Lieb,* 788 F.2d 151. However, the Court omitted precise defini-

---

**2.** To award fees in a copyright infringement case, unlike in a patent case, it is not necessary that the case be exceptional. Though the patent and copyright statutes are similar, the patent statute contains the added proviso that fees are only to be awarded in 'exceptional' cases. *Fogerty,* —— U.S. at —— n. 12, 114 S.Ct. at 1028 n. 12 (citing 35 U.S.C. § 285).

tion of these factors, and it is therefore clear that this unplowed area can only be cultivated on a case by case basis.

### III.

Garnier argues that *Fogerty* teaches that "attorneys fees should not be awarded in cases involving novel or complex issues of law, or where the losing party had asserted its contentions reasonably and in good faith." Pl.'s Consolidated Mem. at 2. In support of its position, the plaintiff lists a number of lower court cases cited by the Supreme Court in *Fogerty*. Additionally, the plaintiff refers to the *Fogerty* court's citation of a congressionally commissioned study of copyright law, which found:

> [C]ourts do not usually make an allowance at all if an unsuccessful plaintiff's claim was not "synthetic, capricious or otherwise unreasonable, or if the losing defendant raised real issues of fact or law."

*Fogerty*, —— S.Ct. at ——, 114 S.Ct. at 1032 (quoting R. Brown, Operation of the Damage Provisions of the Copyright Law: An Exploratory Study, Study No. 23, prepared for Subcommittee on Patents, Trademarks and Copyrights, 86th Cong. 2d Sess.). *See also Norbay Music, Inc. v. King Records, Inc.*, 249 F.Supp. 285, 289 (S.D.N.Y.1966). The plaintiff also cites the Report of the Register of Copyrights, General Revision of United States Copyright Law 109 (1961), which states:

> The discretionary power of courts to require the losing party to pay a "reasonable attorneys fee" is intended to discourage unfounded suits and frivolous defenses. The courts have generally denied awards of attorneys fees where the losing party had solid grounds for litigating his claim or defense.

Pl.'s Consolidated Mem. at 3–4. From the foregoing, the plaintiff concludes that *Fogerty* is nothing more than a reiteration of existing copyright law in that attorneys' fees are to be awarded only when the losing party is guilty of significant blameworthy misconduct. Furthermore, the plaintiff claims that a fee award to defendants would not serve the purposes of the Copyright Act—to encourage original works and stimulate artistic creativi-

ty. *See Fogerty*, —— U.S. at —— n. 19, 114 S.Ct. at 1033 n. 19. This latter contention is premised on the plaintiff being the creator of the Swirled Hoop Earring and the defendants the culprit infringer.

The foregoing arguments, although over-expansive in some respects, such as using a finding of significant blameworthy conduct to determine a fee award, are not lacking in merit. The plaintiff espouses considerations that are encompassed by a court's discretion when weighing the *Lieb* factors in order to make a fee award determination.

### IV.

Discretion, a *sine qua non* in fee cases such as this, is a wide ranging exercise calling on the court to render its own judgment based on the facts before it. The *Lieb* guidelines may or may not be all inclusive in light of the unique factual circumstances before the court. However, the guideposts *Lieb* did set down are the very points the plaintiff argues and I will therefore discuss and apply each of the *Lieb* factors below.

### A. *Frivolousness*

■ The defendants contend that the plaintiff's claim was frivolous because of the lack of factual and legal support for the position it advanced. I am not prepared to say the plaintiff's case was "of little weight or importance," or that it had "no basis in law or fact." Webster's Third New International Dictionary 912 (1967) (defining "frivolous"). The instant case required the court to clarify the application of the so-called "cure" provision of the copyright laws, 17 U.S.C. § 405(a). To do so, the court had to make a number of determinations, not the least of which was a determination of the proper approach to "the problem of determining what constitutes the 'discovery' of omission of copyright notice, and at what point discovery occurs for purposes of the cure provision in § 405(a)." *Charles Garnier, Paris v. Andin Int'l. Inc.*, 36 F.3d 1214, 1219 (1st Cir.1994). A careful factual and legal analysis was required. I do not find that the arguments presented by the plaintiff as to what constitutes discovery, and the point at which dis-

covery occurs can be denigrated to the state of frivolousness. I believe a reading of the First Circuit's review on appeal justifies my conclusion.

## B. *Reasonableness*

■ At trial, Garnier contended that it discovered the copyright omission of its Swirled Hoop Earring in July 1992 when it found out that Andin had produced and sold copies of it. On the other hand, I found that Garnier "should have known" of the omission of notice when it first distributed the earring in April 1988 and, therefore, had discovered the omission of notice on that date.

The appellate court, in an exegesis set forth in its learned opinion, discussed the different approaches employed by courts and commentators to the problem of determining "what constitutes the 'discovery' of omission of copyright notice, and at what point discovery occurs for purposes of the cure provision in § 405(a)." *Charles Garnier, Paris,* 36 F.3d at 1219. It concluded that "deliberate omissions are potentially curable and can be discovered after the first copy of a work is published." *Charles Garnier, Paris,* 36 F.3d at 1221. After further lengthy discussion of the facts, the court found that I was not justified in settling on the April 1988 date. However, the appellate court did find that it could still uphold this Court's judgment because it found that, as a matter of law, Garnier was still required to cure the lack of notice and failed to make reasonable efforts to effect such a cure on certain copies of the earring. In this case, Garnier failed to cure those copies without notice that remained in the retail inventories of Garnier's retail customers as of July 1992. As to these copies, Garnier argued that it did not need to take any efforts to cure the absence of notice, which led to a discussion of the Berne Convention Implementation Act of 1988, Pub.L. No. 100–568, 102 Stat. 2853 (amending 17 U.S.C. § 101 *et seq.*) and 17 U.S.C. § 405(a). It seems to me it must be conceded, as the appellate court noted, that § 405(a) was ambiguous. The appeals court engaged in a considered analysis, ultimately concluding that the cure provision did indeed apply to all copies of Garnier's Swirled Hoop Earring

remaining in its inventories as of July 1992. I can conclude from this, in my discretion, that Garnier's position was not unreasonable. Garnier premised its actions on an erroneous view of the law, but for attorney fees purposes, I judge its conduct prospectively. Hindsight is not the applicable standard in judging the reasonableness of Garnier's suit, and, at the time of initiation, Garnier took a reasonable stand on an unsettled principle of law. To view the plaintiff's conduct retroactively would punish Garnier for litigating a very debatable aspect of the copyright law.

Andin argues that its efforts are consistent with the purposes of the Copyright Act in that it secured the "broad public availability" of the earring and furthered the interest of maintaining the "limited ... nature" of monopoly privileges. Defs.' Reply Mem. at 5. True enough, but a successful defense furthers artistic creativity as much as a successful prosecution of a copyright infringement claim by a copyright owner. *Fogerty,* —— U.S. at ——, 114 S.Ct. at 1030. For attorneys' fees purposes, Garnier cannot be faulted for launching a very reasonable suit to protect its copyright, as it did in this case.

What is important is the issue of objective unreasonableness. In this regard, I look to the teachings of Chief Judge Torruella, the writing judge for the appellate opinion in *Garnier,* which establish that this was a tough case that resulted in setting a precedent for this Circuit. Andin's arguments are premised on its conclusions that the law was clear. Because this case set First Circuit precedent, any arguments premised on the certainty of the applicable law are necessarily flawed.

## C. *Motivation*

I have no record of any pre-litigation settlement conduct other than the attempts I may have made to encourage settlement, and for the purposes of this opinion, such conferences are of no assistance. I do take issue with Andin's statement that:

> Prior to the litigation, Garnier's sole settlement demand was that Andin cease and desist from further sales of the dolphin hoop earring, clearly distinguishable from any copyrightable aspects of Garnier's

piece, and a swirled hoop earring, for which Garnier did not perfect its copyright. To argue that Garnier's demands represent any degree of reasonableness given the weaknesses in its position, constitutes a flight from reality.

Defs.' Reply Mem. at 10–11.

The "weakness" of Garnier's position might lend itself to some debate when viewed in retrospect after the issue was settled by the First Circuit Court of Appeals, but prospectively, at the time it was launched, it was reasonable in light of the state of the law as it then existed.

I am persuaded that the plaintiff's action was motivated by a desire to stop defendants from what it believed was a wrongful copying of a work it had created.

### D. *Need to advance consideration of compensation and deterrence*

The *Lieb* court noted that the amount of fees awarded should be informed by considerations of "compensation and deterrence," "[t]he relative financial strength of the parties," and whether the amount requested is "excessive in light of the [losing party's] resources." *Lieb,* 788 F.2d at 156. It is established that Garnier operates internationally "manufacturing and selling fine jewelry around the world." *Charles Garnier, Paris,* 36 F.3d at 1216. Further, "Andin is the second-largest manufacturer of gold jewelry in the United States ... [with] gross profits in excess of $29 million, and a net worth (or stockholders equity) in excess of $26 million." Pl.'s Consolidated Mem. at 17 (citing uncontradicted affidavits, exh. 3 and 5). The instant case involved litigation between two corporate giants; it would be a rather misplaced argument to debate the relative financial strength of the parties for fee purposes. In light of my finding that defendants are not entitled to attorneys' fees, this consideration is irrelevant. I note, however, that if I had found that Andin was entitled to a fee, the recovery would not be denied because of its wealth, more especially so in light of Garnier's obvious resources. However, this case is not one that lends itself to any further discussion of this factor.

### V.

■ *Fogerty* is the guiding beacon lower courts look to for guidance in determining entitlement to attorney fees in copyright infringement suits. Although it does not reveal a clear cut and detailed view of the course to be followed, *Fogerty* does offer certain definite criteria to be considered. What is certain is that a fee is not automatically awarded to a prevailing party, that "[p]revailing plaintiffs and prevailing defendants are to be treated alike," and that attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. Other than the foregoing, there are no certainties. " 'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.' " *Fogerty,* —— U.S. at ——, 114 S.Ct. at 1033 (citation omitted). *Lieb* provided certain nonexclusive factors that courts should consider in making fee awards to prevailing parties. Since the *Lieb* factors are not exclusive and since *Fogerty* did not define each of the *Lieb* criteria, I also look to pre-*Fogerty* cases.

I do not find that this is a case warranting an award of an attorney's fee to the prevailing defendant. The plaintiff acted reasonably in prosecuting a case that involved complex legal problems, thus justifying a denial of a fee to the defendants. *Official Aviation Guide Co. v. American Aviation Assocs., Inc.,* 162 F.2d 541, 543 (7th Cir.1947) (affirming district court's refusal to allow attorneys' fees as extraordinary costs to prevailing defendant where case was prosecuted in good faith and presented a complex problem of law). *Overman v. Loesser,* 205 F.2d 521, 524 (9th Cir.1953) (declining to award attorneys' fees where case was hard fought and no indication that appeal was pursued in bad faith, where principle question on appeal presented a complex question of law); *Eisenschmil v. Fawcett Publications, Inc.,* 246 F.2d 598, 604 (7th Cir.1957) (where plaintiff's copyright infringement case was not entirely without merit and a close question was involved, plaintiff should not be assessed attorneys' fees). I have also concluded that the plaintiff acted in good faith; a losing party's

good faith can be considered by the court in exercising its discretion. *Sherry Mfg. Co. v. Towel King of Fla., Inc.,* 822 F.2d 1031, 1034 (11th Cir.1987) (fact that losing party has acted in good faith justified an exercise of district court's discretion in deciding not to award attorneys' fees).[3]

For the reasons recited above, the defendants' motion for attorneys' fees is hereby DENIED.

SO ORDERED.

**3.** *See* Michael Tersillo, *Recent Decision,* 33 Duq. L.Rev. 345 (1995) (discussing *Fogerty v. Fantasy, Inc.*).